[Civ. No. 5902. Third Appellate District.—April 1, 1938.]

NEVADA COUNTY LUMBER COMPANY (a Corporation), Respondent, v. LORRAINE JANISS, Appellant.

W. E. Wright for Appellant.

Vernon Stoll for Respondent.

THOMPSON, J.—In a suit to foreclose a mechanic's lien, judgment was rendered against George M. Bobst, the contractor for $799.07, the unpaid balance due plaintiff for materials furnished and used to construct two duplex cabins for Lorraine Janiss upon adjacent parcels of land in Nevada County. The two similar duplex cabins were constructed at the same time by the same contractor under separate agreements. The orders for materials for the two buildings were not segregated. The materials were hauled to the premises and divided equally between the two structures as the work progressed. The plaintiff kept but one account against the contractor for materials sold for both buildings. Payments were credited to that account without regard to the separate buildings which were being constructed. After the work was completed a balance of $799.07 for materials purchased remained unpaid. A notice of claim of lien was filed by the plaintiff as provided by section 1187 of the Code of Civil Procedure, March 16, 1936. The adjoining tracts upon which the two duplex cabins were built are designated as parcels "A" and "B". The court rendered a decree vesting a mechanic's lien for the full amount of the unpaid balance against parcel "B" belonging to the defendant, Lorraine Janiss, and directed the sale of that property to satisfy the judgment. From that judgment the defendant Janiss, only, has appealed.

The appellant contends that two findings which were adopted by the court are not supported by the evidence. The challenged findings are to the effect that the notice of claim of lien was filed December 20, 1935, within the ninety days' limitation prescribed by section 1187 of the Code of Civil Procedure and that all materials represented by the unpaid

balance of $799.07, were used in the building constructed on parcel "B" of the land involved in this suit.

It is conceded the two buildings were exactly alike in plans, specifications and costs thereof. The contract for the one to be built on parcel "A" was executed September 23, 1935. The one to be constructed on parcel "B" was made October 8, 1935. The defendant, Janiss, owns both pieces of property. Both buildings were, however, constructed by the same contractor at the same time. The contracts were not recorded, nor was the notice of completion of the buildings filed by the owner in the office of the county recorder.

We are of the opinion the court's findings that the building on parcel "B" was not completed until December 20, 1935, and that the notice of claim of lien which was filed March 16, 1936, was therefore within the authorized statutory time, are supported by the evidence. It is true that one part of the duplex cabin on parcel "B" was occupied by a tenant of the defendant, Janiss, on December 2, 1935, but substantial work necessary to the completion of the contract was performed as late as December 20, 1935. The appellant contends that the occupancy of the premises by a tenant on December 2nd constituted acceptance of the premises and acknowledgment of completion of the job, and that the services which were later performed were unsubstantial and did not extend the time when the job is deemed to have been completed.

Section 1187 of the Code of Civil Procedure specifies certain circumstances which "shall be deemed equivalent to a completion" of a contract for the purposes of that chapter of the code. The provision relied on by the appellant declares that "the occupation or use of a building . . . by the owner, or his representative, *accompanied by cessation from labor thereon*" will be deemed to constitute a completion of the job, for the purpose of determining the limitation of time within which a notice of claim of lien may be filed. It will be observed the statute does not declare that mere occupation of the building is sufficient to set the statute of limitations running. That occupation must be accompanied by cessation from labor thereon. The question of the completion of a building is one of fact, with the determination of which we may not

interfere where there is substantial evidence to support the finding in that regard.

The fulfillment of the contract in question required the construction of a suitable sewer system to connect the building with a septic tank. The sections of this sewer pipeline had been so joined that the cement which was used for that purpose filled the pipes and obstructed the drainage. The system failed to operate. Within the time allowed for filing the notice of claim of lien, the attention of the contractor was called to that defect, and on the 16th, 17th, and 20th of December, he, in company with other workmen, procured the necessary materials and removed the drainpipes, replacing them with other sections to complete his contract. Eleven hours of work and three men were employed in completing the job. Mr. D. T. Smith, the plumber who, in company with the contractor, worked on the project, testified in that regard:

"I cleared a sewer line, so the water would travel from the house to the septic tank instead of backing up in the line and flooding the floors in the house. . . . I put on sewer cocks or water faucets on the side of the house. . . . Instead of putting it together in the way it should have been done they had forced all the cement in the joint and the water wouldn't go through. . . . Q. Were there fourteen pieces of four inch, two foot, vitrified sewer pipe [used on that job]? . . . A. Yes, but to pick up both houses. (The Court) Did they each have a separate tank? A. No. . . . It had to be fixed before it would operate. . . . Q. How much time did you put in in putting those on or installing those items? A. Eleven or twelve hours. . . . The date on the first tag 8892 [when the work was performed] is December 16th, the date on the next tag is December 17th, the 9902 tag. The last tag number 9039, was December 20th [when the work was completed]. . . . This work consisted of repairing a line to the septic tank? A. No, I put in a whole new line. . . . The line never functioned because the water would never go through it. . . . Q. You removed the pipe line that was put in originally and put in a new one? A. Yes sir."

This furnishes evidence that the building with its necessary sewer system was not completed until December 20, 1935. The notice of claim of lien was filed March 16, 1936, which

was within the ninety-day period of time allowed by the statute.

■ The appellant contends that since a mechanic's lien may be established for the value of materials, only, which have actually been used in the construction of the particular building sought to be charged, the lien in this case should have been limited to one-half of the amount of the unpaid balance, for the reason that all materials were equally divided between the two structures. The rule is well established that a mechanic's lien will vest only to secure payment for materials which are actually used in a particular building. It is said in *Stimson Mill Co.* v. *Los Angeles Traction Co.*, 141 Cal. 30 [74 Pac. 357] :

"It is settled by many decisions in this state that to entitle a materialman to a lien under section 1183 of the Code of Civil Procedure the materials must be furnished to be used, *and must actually be used, in the construction of the building or other structure against which the lien is sought to be enforced.*"

In the present case the evidence is undisputed that the materials for the two buildings under separate contracts were ordered and delivered together on the premises, and that they were used upon both buildings at the same time in equal proportions. It follows that only one-half of the materials which were charged in one account against the contractor were actually used in the building constructed on tract "B", and the lien upon that building should therefore be limited to one-half of the unpaid balance of that account. The finding of the court in that regard is therefore not supported by the evidence.

■ In answer to the foregoing conclusion, the respondent asserts that the rule regarding the crediting of payments to obligations in the order of their priority of maturity is controlling in this case. (Sec. 1479, par. three, subds. 1–3, Civ. Code.) That section provides that when a debtor makes a payment upon several obligations due to another person without designating the debt to which it shall be applied, and the creditor also fails to elect to apply it to a particular obligation, then it must be credited in the following order: 1. To interest due at the time of performance; 2. To principal due at that time; 3. *To the obligation earliest in date of maturity.*

We are of the opinion section 1479 of the Civil Code has no application to the facts of this case. It is true that the contract to construct the building on tract "A" was made September 23, 1935, and the contract for a similar building on tract "B" was made October 8, 1935; that both buildings were constructed and completed at the same time, and that the lumber and materials for these two buildings were ordered together. We must assume the obligations to pay for each combined order for materials for both buildings matured at the same time when the several orders were delivered. In other words, under the evidence of this case, the obligation to pay for materials for one of these buildings did not mature "at an earlier date" than the implied promise to pay for the materials furnished for the other building. The cited section therefore furnishes no rule which applies to the facts in this case. There is no evidence that the plaintiff first applied the payments which were made to extinguish the indebtedness against tract "A". In fact the evidence appears to be just the contrary. One account only was kept by plaintiff against the contractor for materials used in constructing both buildings. It merely appears that when payments were made, they were credited to this one account, and that a balance on both contracts of $799.07 remained unpaid.

The court vested the lien against tract "B" to secure the entire unpaid balance of the bill for materials on the theory that counsel for the appellant at the trial waived all other objections to the rendering of a judgment, except the one regarding the time when the building is deemed to have been completed.

Regarding the subject affecting the appellant's assumed waiver of the invalidity of the lien for more than one-half of the unpaid portion of the indebtedness for materials, a colloquy occurred between the court and counsel after the evidence was closed. The court said:

"The whole case comes down to just a question of law as to whether or not the testimony of this plumber would constitute a completion at that time."

To this statement Mr. Wright, attorney for the appellant, replied:

"That is the only question that is involved. That is the position we take, that the building was completed not later than December 1st."

After stating that the only question to be determined was one of fact as to whether the building was completed prior to the time when the work on the sewer pipes was performed the court added: "That is about all there is to the case," to which Mr. Wright replied: "That is all there is."

In reading the entire record, however, it appears that counsel for the appellant was careful not to waive the necessity of requiring plaintiff to prove that the materials represented by the unpaid balance of the bill were actually used in the building on parcel "B" sought to be charged with the lien. The plaintiff attempted to prove by Mr. Brittan, the carpenter who worked on that building for the contractor, Bobst, what particular lumber and materials were actually used in constructing the building on that tract. He said that all materials were equally divided between the two buildings and he was unable to say just what particular materials were used in either structure. The court then said:

"It doesn't make much difference which one it went into; you can divide it by two. It would give you what went into each."

The attorney for appellant then replied:

"To hasten this matter, I have no objection to admitting that fifty per cent of these labor charges and supplies and materials went into each building. . . . I see that this witness couldn't definitely state so we will admit that."

Mr. Wright also stipulated that the amount or balance "owed by Mr. Bobst to the Nevada County Lumber Company was seven hundred ninety-nine dollars and seven cents, less sixteen dollars and forty-four cents". He did not concede that the lien under any circumstances could vest against parcel "B" for that full amount. The clear inference seems to be that he contended just the opposite. We are of the opinion the record does not justify us in assuming the appellant waived her right to object to the lien on parcel "B" for the full amount of the indebtedness. The judgment vested a lien on tract "B" to secure the payment of $799.07 and interest to the date thereof, aggregating the sum of $847.48. The judgment vesting the lien should therefore be reduced to the sum of $423.74 with interest at the rate of 7 per cent per annum from the date of the judgment. The judgment against the defendant, Bobst, for the full amount of the

unpaid portion of the indebtedness in the sum of $799.07 and interest, together with costs of suit, should remain unchanged.

The judgment for a lien against the defendant, Janiss, is therefore modified to secure payment of the sum of $423.74 and interest, as suggested. As so modified, the judgment is affirmed, costs on appeal taxed to each party.

Plummer, J., and Pullen, P. J., concurred.

A petition by respondent to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on May 26, 1938.